STATE, EX REL. FRED E. READ, APPELLEE, V. FARMERS IRRIGATION DISTRICT, APPELLANT.

FILED JANUARY 24, 1928. No. 26030.

*Raymond & Fitzgerald,* for appellant.

*Mothersead & York, contra.*

Heard before GOSS, C. J., DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ., and PAINE, District Judge.

THOMPSON, J.

This is an application by the relator to the district court for Scotts Bluff county for a writ of mandamus to compel the respondent to drain certain lands within its district, pursuant to section 2887, Comp. St. 1922. After issues were duly joined, trial was had, and peremptory writ issued. To reverse this judgment, respondent appeals.

The alternative writ reflects the following alleged facts, in substance: That the respondent is, and has been for more than ten years last past, an irrigation district organized and operated under the laws of the state of Nebraska; that the relator is now, and has been ever since and before the organization of respondent district, the owner of 120 acres of land in such county, which land constitutes a part of, and is subject to assessment by, respondent, and that he is entitled to all the rights and benefits resulting from the inclusion of his land within such corporation; that his land has become subirrigated, seeped, wet and boggy by reason of the lawful use of water from the respondent's irrigation canal, and from other sources,

not the fault or by the consent of the relator or his lessee; that relator made demand on the board of directors of such district that it drain his land, as provided in section 2887, Comp. St. 1922 (being section 6877, Cobbey's Ann. St. 1909, as amended), which demand the respondent refused contrary to its duties in the premises.

The answer of respondent, considered in connection with the alternative writ, presented issues which warranted the introduction and receipt of evidence from which we conclude the following pertinent facts were proved: That respondent was duly organized, for the purpose indicated by its name, in 1913, under and in accordance with chapter 26, Cobbey's Ann. St. 1909, and amendatory acts thereof, now chapter 26, art. I, Comp. St. 1922, which includes such section 2887; that relator's land is included in such irrigation district and forms a part thereof; that the condition of his land is not the result of the lawful or unlawful use of water from respondent's canal, and neither did it arise from the construction or operation by respondent of its irrigation system, but is due solely, or substantially so, to the seepage and subirrigation of water from sources north and west of relator's land, and not within the limits of the respondent district; also, from a tract of high table irrigated lands situate north and west, consisting of many thousand of acres, fringed by a border of gravel breaks just above respondent's canal, which are irrigated by a canal owned and operated by the United States government, which was in operation prior to respondent's organization and has been ever since; that relator's land is of a value not to exceed $50 per acre, or $6,000, even if drained as by relator prayed; that to drain such land would cost in excess of $15,000.

The relator insists that the section in question, as amended, imposes a duty which is mandatory upon the respondent district to drain his land of such accumulated and accumulating waters, regardless of their source, and notwithstanding the fact that the cost of drainage would far exceed any benefit derived therefrom.

Respondent further, by means of its answer and here, interposed as questions of law, that the statute relating to drainage by irrigation districts, and especially section 2887, Comp. St. 1922, is invalid and unconstitutional for the following reasons, in substance: First, it violates section 14, art. III of the Constitution of Nebraska, in this, that the act of which it is a part, as well as the title thereto, contains more than one subject; second, it violates section 3, art. I of the Constitution of Nebraska, and is in contravention of the Fourteenth amendment of the Constitution of the United States, in that it deprives respondent, and each of its constituent parts, of property without due process of law (which includes a denial of the right of appeal to the courts).

In determining these constitutional questions, it must be remembered that an act of the legislature is presumed to be within constitutional limitations unless the contrary clearly appears.

The "District Irrigation Law" became effective March 26, 1895, as chapter 70 of the laws of that year, and was carried into Cobbey's Annotated Statutes of Nebraska for the year 1909 as sections 6775 to 6924, inclusive. Section 6877 of such statutes was on the 8th day of April 1911, amended by chapter 162, Laws 1911, and is now the aforesaid section 2887, Comp. St. 1922. This section was in force at the time of respondent's organization, and, so far as material to this case, reads as follows:

"The board of directors, or other officers of the district, shall have no power to incur any debt or liability whatever, either by issuing bonds or otherwise, in excess of the express provisions of this article, and any debt or liability incurred in excess of such express provisions shall be and remain absolutely void; *provided*, any irrigation district organized under the provision of this article shall have power to and it shall be its duty to provide for the proper drainage of any and all lands embraced within its limits which are or have been subirrigated by reason of the lawful use of water from its canal by the owner or les-

see of the lands subirrigated or from any cause not the fault or by the consent of such owner or lessee, and for such purpose such district shall have all the authority herein granted for levying special assessments or otherwise providing funds necessary to properly drain such lands; entering upon lands for the purpose of making surveys; exercising the right of eminent domain; contract for the construction of necessary ditches; and further shall have the right to extend such drainage ditches outside of the limits of such district for the purpose of conducting the drainage water to other lands upon which the same may be lawfully used or to return the same to the stream from which its canal is taken."

Such "District Irrigation Law" is an independent act, comprehensive and complete within itself, general in its scope, plain as to its purpose, and is, as we construe it, an act to authorize the creation of a public corporation, manned by officers, by its members selected, clothed with public duties, for the purpose of reclaiming and rendering suitable for agricultural purposes our arid lands, and for the equitable and efficient management and operation of such corporate entity. The title of such original act is equally comprehensive, as is also the title of the amendatory act, and each is within the scope and purpose of such respective acts, and covers but one subject.

Then again, as to the amendatory act, it is one for the amendment of an existent section, is germane to the purpose of the section thereby sought to be amended, and hence the provision added is legislation that could rightfully be included in the amendatory section. Thus, we are impelled to conclude that neither the original nor the amendatory act are vulnerable to the first challenge interposed. In this we are sustained by our holdings in *Sheridan County v. Hand,* 114 Neb. 813, and *State v. Johnson, ante,* p. 249. As to the section amended forming a part of the title of the amendatory act, we are supported by *In re Estate of Austin, ante,* p. 137.

As to the challenge that the section as thus amend-

ed contravenes section 3, art. I of the Constitution of Nebraska, and the Fourteenth amendment of the Constitution of the United States, in that it deprives respondent, and each of its constituent parts, of property without due process of law, and is a denial to each thereof of the right of appeal to the courts, it is sufficient to say that these contentions have each thereof been met, and, either directly or by every reasonable inference, resolved by us against the challenge of respondent and in favor of the constitutionality of the respective acts, in *Board of Directors of Alfalfa Irrigation District v. Collins*, 46 Neb. 411, and, by analogy, in *Whedon v. Wells*, 95 Neb. 517, which holdings are by us approved.

This brings us to the proper construction of the section in question. Such section mentions only subirrigated lands; but, so far as this case is concerned, we are construing that term to include seeped lands as well. Before the' amendment of 1911, the act, taken as a whole, dealt exclusively with freeholders and their lessees within the district, with lands forming an integral part of the district, and with waters used in its operation, stored or flowing through its canal or canals. These were the people, the lands, the waters, and the canals that the legislative body must have had in mind when considering the enactment of the amendment in question. To hold otherwise would be to defeat the entire purpose of the enactment, as is well illustrated by this record. The proviso, according to the ordinary rules governing such, must be strictly construed, and in the light reflected by the act or statutes of which it is made a part, not in derogation of the intent and purpose of the original, but in furtherance thereof. If, therefore, the proviso is to be so limited, it follows, as above indicated, that the only subirrigated lands, and the only waters, which it rightly refers to or includes, are lands and waters which are a part of the irrigation system. This would limit the liabilities of the district to damages of which its own waters were the proximate cause. This, indeed, does not eliminate the words "from any cause not the fault or by

the consent of such owner or lessee," but would merely, by construction, retain as part of such clause the limitation which is apparently understood, that it refers to the waters owned, controlled, and distributed by the irrigation district. In other words, by construction, the language of the amendment would read: "Provided, any irrigation district organized under the provision of this article shall have power to and it shall be its duty to provide for the proper drainage of any and all lands embraced within its limits which are or have been subirrigated; (a) by reason of the lawful use of water from its canal by the owner or lessee of the lands subirrigated; (b) by reason of any use of the water (from its canal) from any cause not the fault or by the consent of such owner or lessee." This construction necessarily follows, as the legislative intent must be determined from a consideration of the act as a whole, a rule by us universally adhered to. In *Barker v. Wheeler*, 71 Neb. 740, 745, we held: "All acts of the legislature upon the same general subject-matter must be construed as part of a single plan, and later statutes are to be considered as supplementary or complementary to the earlier enactments. In the passage of each act, the legislature must be supposed to have had in mind the existing legislation on the same subject and to have shaped its new enactment with reference thereto."

Considering the law applicable to an action of the kind under consideration, it must be remembered that mandamus, while classed as a law action, is an extraordinary remedy, which is not awarded as a matter of right, but rests in the sound discretion of the court governed by equitable principles, and will not issue when to do so would compel the doing of a substantial wrong. *In re Skinner & Eddy Corporation*, 265 U. S. 86; *Donahue v. State*, 70 Neb. 72; *Moores v. State*, 71 Neb. 522; *State v. Cowles*, 90 Neb. 839; *State v. McIlravy*, 105 Neb. 651; *State v. Board of County Commissioners*, ante, p. 261; 38 C. J. 543, sec. 4.

Thus, it becomes our duty to appply the above indicated equitable principles to the facts. In doing so we have taken into consideration the foregoing construction of the statute in question, the location, subsoil conditions, and physical contour of relator's and adjoining lands, together with the fact that the cost of such drainage would be great as compared with the benefit to be derived therefrom, and the further fact, that the condition of relator's land is due solely, or substantially, to sources not within the respondent district, and neither does the evidence show or tend to show that seepage from respondent's canal was sufficient to necessitate drainage of relator's land; and we conclude that the judgment of the trial court is contrary to the law applicable, and is inconsistent with justice and equity, in that it directs the doing of a substantial wrong.

The judgment is reversed and the cause remanded, with directions to dismiss the action, at the costs of relator in both the supreme and district courts.

REVERSED.

Note—See Constitutional Law, 12 C. J. 791 n. 19—Mandamus, 18 R. C. L. 137, 3 id. Supp. 788, 6 id. Supp. 1055. 38 C. J. 543 n. 39.